IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Todd DeGeer, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |
| Union Pacific Railroad Co., | |
| Defendant. | |

Plaintiff Todd DeGeer ("DeGeer") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA").

## PRELIMINARY STATEMENT

1. Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation. Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2. Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the Ishihara test, which consists of a

number of colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems to have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

3.  Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty program includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses next to the tracks along the Right of Way or within the railyards whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performing their jobs without missing a signal for years or even decades.

4.  In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's

---

[1] Color-vision deficiency is typically a congenital inability to distinguish certain color shades under normal lighting condition; whereas, color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

Fitness-for-Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris* plaintiffs' allegations "clearly encompass[ed] vision testing as it [was] included in the FFD program." *Harris*, 2019 WL 418418, at *3 (D. Neb. Feb. 1, 2019).

5.  DeGeer is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite being qualified and safely performing his job without incident, DeGeer was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific on the basis of his real, record of, or perceived disability, which regards his ability to see color. DeGeer was a class member in *Harris*, and now timely brings this individual action

## JURISDICTION AND VENUE

4.  This Court has jurisdiction under 28 U.S.C. § 1331 because Union Pacific violated the ADA.

5.  Venue is proper under 28 U.S.C. § 1391(b)(1), because defendant is headquartered in Omaha, Nebraska.

6.  Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because Defendant committed unlawful employment practices in Omaha, Nebraska; because employment records relevant to Defendant's unlawful employment practices are maintained and administered in Omaha, Nebraska; and because Defendant's principal office is in Omaha, Nebraska.

## THE PARTIES

7. DeGeer resides in Eugene, Oregon. He was an employee of Union Pacific, working in Phoenix, Arizona.

8. Union Pacific is a railroad carrier engaged in interstate commerce with operations in Phoenix, Arizona, and is headquartered in Omaha, Nebraska.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

9. Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report, or when Union Pacific suspects, that they have certain medical and/or physical conditions.

10. When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

11. Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-vision deficiency triggers a Fitness-for-Duty evaluation.

12. FRA regulation requires that all locomotive engineers and conductors undergo periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or

conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

13. Union Pacific utilizes the 14-Plate Ishihara test to determine color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon test.

14. The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad signals.

15. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been removed from work without pay either for an extended period or indefinitely.

### *PLAINTIFF DEGEER*

16. DeGeer was hired by Union Pacific in October 1978 and worked for the company for nearly forty years until it removed him from service in approximately June 2017.

17. Most recently, DeGeer worked for Union Pacific as a Conductor in Phoenix, Arizona.

18. As a Conductor, part of DeGeer's job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. DeGeer safely worked for Union Pacific for nearly forty years without misreading a signal.

19. In approximately 2014 or 2015, DeGeer took and did not pass the Ishihara test. Union Pacific then administered its standard CVFT to DeGeer, using actual signals on

the track. DeGeer passed the CVFT and continued to work.

20. Then, in approximately 2017, DeGeer again took and did not pass the Ishihara test. This time, Union Pacific administered its new Light Cannon Test to DeGeer. DeGeer did not pass the Light Cannon Test.

21. In June 2017, Union Pacific imposed permanent work restrictions on DeGeer, which prohibited him from working in his job as a Conductor, or as a Brakeman, Engineer, or any other position requiring identification of colored signals.

22. In the time since removing him from service, Union Pacific has persisted in its refusal to allow DeGeer to return to his job as a Conductor. At all times, DeGeer has been capable of performing the essential functions of his job, and he remains able to perform them today.

### *PLAINTIFF DEGEER'S CLAIMS WERE TOLLED DURING* HARRIS

23. On February 19, 2016, counsel for DeGeer, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA and state law. The case was thereafter transferred to the District of Nebraska. *See Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

24. The *Harris* Court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

25. DeGeer was a member of the certified (and subsequently decertified) class in *Harris*.

26. Because he was a class member in the *Harris* case, DeGeer's disability discrimination claims were subject to tolling during the pendency of litigating the class-

6

wide claims, pursuant to the Supreme Court's rulings in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974) and *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

27. As a result of *American Pipe* and *Crown Cork* tolling, DeGeer had three hundred (300) days from the date of the Eighth Circuit's order to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the statute of limitations for DeGeer's and other putative class members' claims by an additional sixty (60) days. DeGeer timely filed a charge of discrimination with the EEOC. On January 5, 2023, the EEOC issued a right-to-sue letter. DeGeer now timely initiates the present lawsuit.

### UNION PACIFIC MAKES FALSE CLAIMS THAT CERTAIN HARRIS CLASS MEMBERS' CLAIMS WERE NOT TOLLED

28. Since the Eighth Circuit's decertification decision, several former *Harris* class members have filed individual lawsuits against Union Pacific after they were subject to a Fitness-for-Duty evaluation and removed from service following a failed Light Cannon test.

29. In each, Union Pacific argued that the color vision plaintiffs' claims were not included in the class certified (and subsequently decertified) by *Harris*, and thus were not tolled under *American Pipe* and *Crown Cork*. *See e.g.*, *Blankinship v. Union Pac. R.R. Co.*, No. CV-21-00072-TUC-RM, 2022 WL 4079425 (D. Ariz. Sept. 6, 2022), *motion for relief from judgment denied*, No. CV-21-00072-TUC-RM, 2022 WL 16715467 (D. Ariz. Nov. 4, 2022); *Donahue v. Union Pac. R.R. Co.*, No. 21-CV-00448-MMC, 2022 WL 4292963 (N.D. Cal. Sept. 16, 2022); Findings and Recommendation, *DeFries v. Union Pacific R.R. Co.*, No. 3:21-cv-00205-SB (D. Or. Nov. 23, 2022).

7

30. Union Pacific's argument is false and a blatant misrepresentation of the record from *Harris*.

31. All parties, including Union Pacific, understood that color vision plaintiffs like DeGeer were included in the class of employees certified by the District Court in *Harris*, and thus subject to tolling until the Eighth Circuit's decision.

32. The *Harris* Plaintiffs moved for class certification on August 17, 2018. The plaintiffs sought to certify a class of: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." *Harris*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). In their motion, the plaintiffs sought certification of a class, setting forth that the "reportable health events" policy, as applied by Union Pacific, included individuals like DeGeer who failed a color vision test.

33. To that end, the *Harris* plaintiffs submitted a memo from Dr. Holland detailing the Standard Work Restrictions for employees who fail the color vision test, detailed a report from their color vision expert, Dr. Jay Neitz, who "concluded that Union Pacific applies an unvalidated, light can[n]on test, on a group of people in which we know that many are capable of performing tasks required of conductors and engineers[,]" and attached declarations from nine class members who were subject to a Fitness-for-Duty review after failing the Light Cannon test.

34. In in its response to the *Harris* plaintiffs' motion, Union Pacific addressed the color vision allegations and class members, and acknowledged the *Harris* plaintiffs' intention to include color vision plaintiffs in the class it sought to certify:

- "The putative class is widely divergent. . . . There are also 192 individuals with hearing restrictions and 969 individuals with vision restrictions, many

8

    of which are regulated by FRA regulations on hearing and vision requirements for engineers and conductors."

- "The declarations filed by some of the putative class members [include] . . . ten declarants with alleged color vision deficiencies."

- "There are also 192 individuals with hearing restrictions and 969 individuals with vision restrictions, many of whom are regulated by FRA regulations on hearing and vision requirements for engineers and conductors."

- "Second, only 378 putative class members have restrictions that prohibit them from working 'in positions requiring accurate color signal recognition.'"

35.     On February 5, 2019, the District Court granted the *Harris* plaintiffs' Motion for Class Certification. *Harris*, 329 F.R.D. 616, 621-28 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). In its decision, the District Court specifically referenced the class member declarations that included color vision plaintiffs and found that these plaintiffs had "experienced the discrimination alleged herein." *Id*. at 624. In the process, the Court rejected Union Pacific's argument that the color vision claims were not "typical" of the class or should be excluded. *Id*. at 623-24. Further, the *Harris* Court ordered that class notice be sent to all 7,723 employees on the list of employees who were subject to a Fitness-for-Duty evaluation following a reportable health event produced by Union Pacific during discovery in *Harris*. *Id*. at 627 ("Union Pacific . . . identif[ied] a total of 7,723 current and former employees that are on this class list.").

36.     At class certification, Union Pacific admitted that 969 individuals from the class list had "vision restrictions[,]" and 378 of the "putative class members" had restrictions that prohibited them from working "in positions requiring accurate signal recognition."

37.     Following the District Court's certification order, Union Pacific petitioned

9

to the Eighth Circuit Court of Appeals for permission to appeal the District Court's Order Granting Class Certification. In its petition, Union Pacific acknowledged that the District Court certified a "class of more than 7,000 current and former Union Pacific employees" who "alleged that they were removed from service after they experienced a reportable health event and were subjected to a fitness-for-duty examination."

38. According to Union Pacific, the class included "employees who experience a reportable health event—as well as employees who, for example, transfer to a safety-sensitive job, return to work after a prolonged absence, or seek certain industry certifications[,]" and covered employees who had experienced a broad universe of conditions or events that lead to a Fitness-for-Duty examination, including vision deficiencies:

> The 7,000-plus additional class members have a vastly broader universe of conditions or events that led to a fitness-for-duty examination, such as suffering a stroke, [*Harris* ECF No.] 248-33 at 41, 82, 88; traumatic head or brain injuries, *id.* at 105, 118; heart diseases and failures, *id.* at 97, 111; *vision deficiencies*, *id.* at 5, 17; hearing loss, *id.* at 11; fainting spells, *id.* at 8; and losing consciousness at work, *id.* at 38, 70.

39. In support of its position that "vision deficiencies" were included in the certified class, Union Pacific cited the declaration of Leonard Barkmeier that was submitted by the plaintiffs at class certification. Like DeGeer, Barkmeier alleged that he was taken out of service after failing a certification examination, and he had no "change" in his medical condition that led to the failed test or Fitness-for-Duty review. Notwithstanding, Union Pacific cited his declaration as exemplary of the "vision deficiency" class allegations.

40. Then, in its merits briefs before the Eighth Circuit Court of Appeals, Union Pacific acknowledged that the District Court certified a "sprawling, diverse class of more

10

than 7,000 current and former Union Pacific employees." Opening Brief for Appellant at i, *Harris v. Union Pacific R.R. Co.*, No. 19-1514 (8th Cir. Apr. 25, 2019). The railroad also cited the 44 declarations submitted by the plaintiffs at class certification (nine of whom were plaintiffs who failed the Light Cannon test) and admitted that they were part of the District Court's certified class:

> The 7,000-plus absent class members have a vastly broader universe of conditions or events that led to a fitness-for-duty examination, as illustrated by the personal stories of the 44 declarants. Some suffered a stroke . . . . *Others experienced vision deficiencies*.

*Id.* at 25-26.

41.     On March 24, 2020, the Eighth Circuit Court of Appeals agreed with Union Pacific, and reversed the District Court's class certification order. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1039 (8th Cir. 2020).

42.     Now, years after the Eighth Circuit adopted its argument and decertified the *Harris* class, Union Pacific has switched course, claiming color vision plaintiffs like DeGeer were excluded from the certified class, and thus not subject to tolling.

43.     Plaintiff DeGeer expects that Union Pacific will repeat this specious argument in the present case. Because familiarity with the *Harris* docket, and interpretation of the *Harris* District Court's class certification order, are central to understanding (and rejecting) Union Pacific's baseless claim, this case is a "related case" as defined by Rule 1.4(a)(4)(C) of this Court's General Rules, and should therefore be assigned to Judge Bataillon, the District Court Judge who presided in *Harris*.

## CAUSES OF ACTION

### COUNT I
### *VIOLATIONS OF THE ADA*
### *DISABILITY DISCRIMINATION—42 U.S.C. § 12112(a)*

44. Plaintiff incorporates the paragraphs above by this reference.

45. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

46. At all relevant times, DeGeer was an individual with a disability under the ADA.

47. At all relevant times, DeGeer had the requisite skill, experience, education, and other job-related requirements of his position and was therefore a qualified individual under the ADA.

48. At all relevant times, DeGeer could perform the essential functions of his position, with or without reasonable accommodations.

49. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

50. Union Pacific discriminated against DeGeer on the basis of disability.

51. Because Union Pacific violated 42 U.S.C. § 12112, DeGeer has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. DeGeer is also entitled to attorneys' fees and costs incurred in connection with these claims.

52. Union Pacific committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of DeGeer. As a result, DeGeer is entitled to punitive damages.

## COUNT II
### VIOLATIONS OF THE ADA
### DISABILITY DISCRIMINATION—42 U.S.C. § 12112(b)(6)

53. Plaintiff incorporates the paragraphs above by this reference.

54. DeGeer is a qualified individual with a disability under the ADA.

55. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

56. Union Pacific discriminated against DeGeer on the basis of disability.

57. Union Pacific's Fitness-for-Duty policies and practices disproportionately—and adversely—impacted qualified individuals with disabilities.

58. Union Pacific uses qualification standards that screen out and tend to screen out individuals with disabilities.

59. Union Pacific cannot show that such qualification standards are job-related and consistent with business necessity.

60. Because Union Pacific violated 42 U.S.C. § 12112, DeGeer has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. DeGeer is also entitled to attorneys' fees and costs incurred

in connection with these claims.

61. Union Pacific committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of DeGeer. As a result, DeGeer is entitled to punitive damages.

## COUNT III
### REQUEST FOR DECLARATORY JUDGMENT—28 U.S.C. § 2201

62. Plaintiff incorporates the paragraphs above by this reference.

63. Union Pacific has argued in several cases arising from the now-decertified *Harris* action that color vision plaintiffs' claims were not included in the class certified (and subsequently decertified) in that case, and thus these plaintiffs' claims were not tolled.

64. Union Pacific's arguments about who was included in, and excluded from, the certified *Harris* class has resulted in dismissal, on timeliness grounds, of cases brought by color vision plaintiffs similarly situated to DeGeer.

65. An actual case or controversy of a justiciable nature exists between DeGeer and Defendant with regard to DeGeer's membership in the certified (and subsequently decertified) *Harris* class.

66. DeGeer seeks the declaratory judgment of this Court, under the authority of 28 U.S.C. § 2201, that DeGeer was a member of the certified *Harris* class until the date the Eighth Circuit issued its order decertifying the class.

## PRAYER FOR RELIEF

**WHEREFORE,** DeGeer prays for judgment against Union Pacific as follows:

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;
2. An injunction against Union Pacific and its directors, officers, owners, agents,

successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For DeGeer's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For a declaratory judgment that DeGeer was a member of the certified *Harris* class until the date the Eighth Circuit issued its order decertifying the class;

9. For such other and further relief available by statute; and

10. For such other and further relief as the Court deems just and equitable.

Date: January 6, 2023                                **NICHOLS KASTER, PLLP**

s/James H. Kaster
James H. Kaster* (MN 53946)
    kaster@nka.com
Lucas J. Kaster* (MN 396251)
    lkaster@nka.com
Charles A. Delbridge* (MN 386639)
    cdelbridge@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

*admitted in D. Neb.*

**ATTORNEYS FOR PLAINTIFF**