# EXHIBIT 14

Allison D. Balus

1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
Tel: 402.344.0500
Fax: 402.344.0588
Direct: 402.636.8254
abalus@bairdholm.com
www.bairdholm.com
Also admitted in District of Columbia,
Iowa, Virginia

April 9, 2018

**VIA E-MAIL**

James H. Kaster (kaster@nka.com)
David Schlesinger (schlesinger@nka.com)
Charles Delbridge (cdelbridge@nka.com)
Robert Schug (schug@nka.com)
Neil Pederson (npederson@nka.com)
Nichols Kaster
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

    Re:    *Harris et al. v. Union Pacific Railroad Company*
                Case No. 8:16-cv-381

Dear Counsel:

I am writing to raise concerns regarding Plaintiffs' Answers and Objections to Defendant's Third Set of Interrogatories as well as Plaintiffs' general assertions regarding the scope of their class claims in this lawsuit.

**Plaintiffs' Objections**

I will start with Plaintiffs' inappropriate objection to each of the interrogatories on the basis that it is a "premature contention interrogatory" and seeks "information protected by the attorney work-product doctrine." Federal Rule of Civil Procedure 33 states:

> An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but *the court may* order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

*Providing Exceptional Legal Service Since 1873*

David Schlesinger
April 9, 2018
Page 2

Fed.R.Civ.P. 33(a)(2) (emphasis added). Notably, Rule 33 does not permit a party to object unilaterally to the timing of a contention interrogatory, and Plaintiffs have not asked the court to delay the deadline for its response to these interrogatories. Moreover, as the District Court of Nebraska has noted, "contention interrogatories … can be extremely useful in narrowing and sharpening the issues, which is a major purpose of discovery." *Torre v. Northrop Grumman Sys. Corp.*, No. 8:13CV319, 2016 WL 323593, at *3 (D. Neb. Jan. 26, 2016).

The parties agreed in their Rule 26(f) report (Filing No. 98), which the court adopted, that the purpose of Phase I discovery would be "to determine if class certification of Plaintiffs' claims is warranted." Phase I discovery is set to close on May 14, 2018, and Plaintiffs' motion for class certification is due May 25, 2018. Interrogatory Nos. 19 through 28 are relevant to Phase I discovery, and there is only slightly more than a month left before the close of Phase I discovery. Thus, Defendant asks that Plaintiffs withdraw these frivolous objections and adequately respond to the requests sufficiently in advance of the close of discovery to allow Defendant to evaluate the need for further discovery based on those responses. **To be clear, Defendant will object to and move to strike any assertions made in Plaintiffs' motion for conditional certification that were not appropriately provided in response to Defendant's discovery requests during Phase I discovery.**

**Interrogatory Nos. 26 and 27 and Plaintiffs' Class Definition**

Just as concerning is Plaintiffs' continued insistence that "the class definition remains as defined in the Amended Complaint." (Plaintiffs' response to Interrogatory No. 26). We have raised with you our concerns regarding the vagueness and overbreadth of the class definition for over a year.

First, we were clear in our objections to Plaintiffs' first set of discovery requests, served on February 24, 2017, that we understood the class to include only fitness-for-duty evaluations related to Reportable Health Events. As we have explained, regardless of the class definitions in paragraphs 116 and 126 of the First Amended Complaint, all of the factual allegations pled and the Named Plaintiffs' claims revolve around fitness-for-duty evaluations that were initiated because of a Reportable Health Event. As Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class," Defendant limited its discovery responses on that basis.

Moreover, Plaintiffs' own briefing in opposition to Defendant's Motion to Dismiss supported Defendant's interpretation of the class claims as limited to FFD evaluations initiated because of a Reportable Health Event:

- "Plaintiffs challenge Union Pacific's policy of requiring employees subject to its Fitness-for-Duty program to disclose certain medical conditions, *and then* making

David Schlesinger
April 9, 2018
Page 3

> overly broad demands for medical records that are used to disqualify employees based on standard work restrictions, medical rules, and drug rules." (p. 1) (emphasis added);

- "Plaintiffs challenge Union Pacific's policy of requiring employees subject to its Fitness-for-Duty program to disclose certain medical conditions, *and then* making overly broad demands for medical records that are used to disqualify employees from work based on disability." (p. 2) (emphasis added)

- Outlining the requirement in Union Pacific's Medical Rules that employees in certain positions disclose Reportable Health Events. (p.3)

- "Once such an event is disclosed or discovered, Union Pacific requires the affected employees to undergo a Fitness-for Duty Evaluation." (p. 4)

- "Each of the Named Plaintiffs received treatment or testing for one of the medical conditions specified in the Fitness-for-Duty policy." (p. 6)

- "Plaintiffs challenge Union Pacific's policy of requiring employees subject to its Fitness-for-Duty program to disclose certain medical conditions, *and then* making overly broad demands for medical records that are used to disqualify employees based on standard work restrictions, medical rules, and drug rules." (p. 15) (emphasis added);

- "Unlike *Hohider*, Plaintiffs challenge a policy involving a specific, enumerated list of "health events," and a common set of generalizations and restrictions used to *remove* employees from service based on disability." (p. 25) (emphasis in original and citing 1-18 of the First Amended Complaint).

- "To the extent that there are differences in Union Pacific's policies as they relate to the five categories of 'reportable health events,' these differences can be managed through the use of subclasses." (p. 25)

(Doc #92).

In addition, we have continually raised concerns that the class definitions in paragraphs 116 and 126 of the First Amended Complaint are not adequately defined or clearly ascertainable. "A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017), *reh'g denied* (Oct. 4, 2017). Despite our numerous requests, Plaintiffs have never identified such objective criteria by which class members were to be identified. The class definitions themselves do not provide adequate criteria. For example, whether an employee was "removed from service over [his] objection" is a subjective, not objective, criterion. *See, e.g.*, *Spagnola v. Chubb Corp.*, 264 F.R.D. 76

David Schlesinger
April 9, 2018
Page 4

(S.D.N.Y. 2010) ("Where any criterion is subjective, e.g., state of mind, the class is not ascertainable.") (internal quotations and citations omitted).

==Not only are the class definitions impermissibly vague, but Plaintiffs have improperly used that lack of specificity to try to expand the class and the scope of their class claims. For example, Plaintiffs have argued that the class list should include all persons with vision or hearing changes even if those vision or hearing changes were not considered Reportable Health Events by Union Pacific. This interpretation of the class definition could arguably include anyone who was pulled from service temporarily for a regulatory vision or hearing exam—a total of more than 191,000 employees.== Even if Plaintiffs were looking to include only those who had deferred exams, we do not believe such employees would be appropriately included in the class. None of the Named Plaintiffs were pulled from service because of a vision or hearing issue, and there are no allegations in the First Amended Complaint regarding regulatory exams for hearing or vision. Moreover, little of the discovery and none of the expert reports have addressed regulatory exams for hearing or vision.

You have mentioned in our recent discussions that Plaintiffs are also interested in the Color Vision Field Test (CVFT), but again, this is beyond the scope of the class action pled in the First Amended Complaint. As we have previously explained (see Scott Moore's August 29, 2017 email with the Subject: "Harris v. UP"), documents related to the CVFT were not responsive to any particular request for production. For that reason, we have provided limited discovery on the issue but have not made efforts to produce all documents relevant to the CVFT.

Simply put, Plaintiffs continued attempts to expand the scope of both the class definition and discovery throughout this case are inappropriate. The allegations of six Named Plaintiffs who went through FFD evaluations for specific Reportable Health Events does not justify drawing in as a putative class member every Union Pacific employee who went through an FFD evaluation for any reason. For all of these reasons, we request that Plaintiffs immediately supplement their response to Interrogatory Nos. 26 and 27 with a class definition that is ascertainable and appropriately tailored to the scope of the Named Plaintiffs' claims. **Again, Defendant will object to and move to strike any assertions made in Plaintiffs' motion for conditional certification that were not appropriately provided in response to Defendant's discovery requests during Phase I discovery.**

**Interrogatory No. 28**

Plaintiffs' objection and failure to respond to Interrogatory No. 28 is similarly inappropriate. That the court has not yet set a deadline for proposed jury instructions does not make Interrogatory No. 28 outside of the scope of Phase I discovery and Federal Rule of Civil Procedure 26. Indeed, courts have recognized the importance of

David Schlesinger
April 9, 2018
Page 5

proposed jury instructions from plaintiffs in evaluating the manageability of a putative class action. As the Eleventh Circuit has explained:

> [C]ourts must consider how a case will be tried as part of the superiority assessment, *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir.2004). Accordingly, the proposal of a workable trial plan will often go a long way toward demonstrating that manageability concerns do not excessively undermine the superiority of the class action vehicle. Moreover, there is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents. We therefore recommend that district courts make it a usual practice to direct plaintiffs to present feasible trial plans, *which should include proposed jury instructions*, as early as practicable when seeking class certification.

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009) (emphasis added); *see also*, *In re Prempro*, 230 F.R.D. 555, 568 (E.D. Ark. 2005) ("The absence of an adequate trial plan and proper jury instructions supports what Defendants have said all along—there is no way that the claims of these multi-state plaintiffs can be adequately addressed in a single class action trial.") Therefore, we ask that you withdraw your objections and provide a substantive response to Interrogatory No. 28.

As always, if you wish to discuss these concerns further, we would be happy to do so.

Very truly yours,

*Allison D. Balus*

Allison D. Balus
FOR THE FIRM

Cc (by email): Nicholas D. Thompson
Scott P. Moore
David Kennison

DOCS/2045943.2