# EXHIBIT 19

No. ___

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

QUINTON HARRIS, GEOFFREY MILLER, NORMAN MOUNT,
SCOTT ZINN, THOMAS TAYLOR, and JOHN BAKER,

*Plaintiffs-Respondents,*

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Petitioner.*

_____

On Petition for Permission to Appeal
from the United States District Court
For the District of Nebraska
No. 8:16-CV-00381-JFB-SMB

_____

## UNION PACIFIC'S PETITION FOR PERMISSION TO APPEAL
## FROM ORDER GRANTING CLASS CERTIFICATION

_____

Scott Parrish Moore
Christopher R. Hedican
Allison D. Balus
Leigh Campbell
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
(402) 344-0500

Thomas H. Dupree Jr.
Eugene Scalia
Naima L. Farrell
Aaron Smith*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500
tdupree@gibsondunn.com
*Admitted only in Alabama*

## CORPORATE DISCLOSURE STATEMENT

Union Pacific Railroad Company is a wholly owned subsidiary of Union

Pacific Corporation, a publicly traded company.  No publicly traded corporation is

known to own 10% of the stock of Union Pacific Corporation.

<u>/s/ Thomas H. Dupree Jr.</u>
Thomas H. Dupree Jr.

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ........................................................................................1

QUESTIONS PRESENTED..........................................................................3

BACKGROUND ..........................................................................................4

RELIEF SOUGHT .......................................................................................8

STANDARD OF REVIEW ............................................................................8

REASONS FOR GRANTING THE PETITION.................................................9

I.    This Case Presents Important Questions Concerning Class Actions Under The Americans With Disabilities Act .......................................9

    A.    The District Court Improperly Relieved Plaintiffs Of The Burden Of Proving The Statutory Elements Of Their ADA Claims .................................................................10

    B.    The District Court's Superficial Discussion Of Predominance Ignored Critical Differences Among Class Members .............14

    C.    The Trial Plan Is Unconstitutional And Unmanageable..........18

II.    The District Court's Certification Of A Class Containing Persons Who Lack Standing Is An Independent Error That Warrants Review .................................................................21

CONCLUSION ..........................................................................................24

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ....................................................................20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................13

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ..................................................14, 17, 21

*Belk v. Sw. Bell Tel. Co.*,
   194 F.3d 946 (8th Cir. 1999) ...................................................................19

*Brunckhorst v. City of Oak Park Heights*,
   No. 17-3238, 2019 WL 419178 (8th Cir. Feb. 4, 2019).....................10

*Carlson v. InaCom Corp.*,
   885 F. Supp. 1314 (D. Neb. 1995).........................................................10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..................................................................................17

*Contreras v. Suncast Corp.*,
   237 F.3d 756 (7th Cir. 2001) ..................................................................22

*Davis v. Anthony, Inc.*,
   886 F.3d 674 (8th Cir. 2018) ..................................................................22

*Ebert v. Gen. Mills, Inc.*,
   823 F.3d 472 (8th Cir. 2016) .......................................................2, 14, 18

*EEOC v. Wal-Mart Stores, Inc.*,
   477 F.3d 561 (8th Cir. 2007) ..................................................................19

*Elizabeth M. v. Montez*,
   458 F.3d 779 (8th Cir. 2006) ..................................................................10

*Halvorson v. Auto-Owners Ins. Co.*,
   718 F.3d 773 (8th Cir. 2013) ...........................................................21, 22

iii

*Hohider v. United Parcel Serv., Inc.*,
　　574 F.3d 169 (3d Cir. 2009) ................................................................1, 12, 13

*Int'l Bhd. of Teamsters v. United States*,
　　431 U.S. 324 (1977) ..............................................................................11

*Jamie S. v. Milwaukee Pub. Schs.*,
　　668 F.3d 481 (7th Cir. 2012) .................................................................13

*Lindsey v. Normet*,
　　405 U.S. 56 (1972) ................................................................................19

*In re Lorazepam & Clorazepate Antitrust Litig.*,
　　289 F.3d 98 (D.C. Cir. 2002) .................................................................9

*Microsoft Corp. v. Baker*,
　　137 S. Ct. 1702 (2017) .........................................................................8, 9

*Ortiz v. Fibreboard Corp.*,
　　527 U.S. 815 (1999) ..............................................................................13

*Prado-Steiman v. Bush*,
　　221 F.3d 1266 (11th Cir. 2000) .............................................................9

*In re Rhone-Poulenc Rorer, Inc.*,
　　51 F.3d 1293 (7th Cir. 1995) .................................................................20

*Spokeo, Inc. v. Robins*,
　　136 S. Ct. 1540 (2016) ..........................................................................22

*Sutton v. United Air Lines, Inc.*,
　　527 U.S. 471 (1999) ..............................................................................10

*Tyson Foods, Inc. v. Bouaphakeo*,
　　136 S. Ct. 1036 (2016) ..........................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) .........................................................................*passim*

iv

**Statutes**

28 U.S.C. § 2072(b) ...........................................................................................13

42 U.S.C. § 12102(1)(A)..................................................................................5, 15

42 U.S.C. § 12102(1)(C) .....................................................................................5

42 U.S.C. § 12111(3) ...........................................................................................19

42 U.S.C. § 12111(8) ...........................................................................................5

42 U.S.C. § 12112(a) ...........................................................................................5

42 U.S.C. § 12112(b)(6) ...................................................................................5, 19

v

## INTRODUCTION

In a case of first impression in this Circuit, the district court certified a class action under the Americans with Disabilities Act ("ADA") by using the *Teamsters* method of proof to relieve class members of their statutory obligations to establish that they are disabled and qualified to perform the jobs at issue.

The certified class of more than 7,000 current and former Union Pacific employees—roughly one-sixth of Union Pacific's entire workforce—challenges Union Pacific's various methods of ensuring that workers in safety-critical jobs are fit for duty and do not have a medical condition that could suddenly incapacitate them while operating a train or performing jobs that implicate public safety.  The class-certification ruling is manifestly erroneous and directly conflicts with the Third Circuit's decision in *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009), which holds that the *Teamsters* two-stage approach—classwide discrimination decided in the first stage, individual damages in the second—is *not* permissible in ADA disparate treatment class actions like this one, because resolving ADA claims, and the employer's defenses, requires individualized assessments before liability under the ADA can be determined.

The district court further erred by failing to conduct a rigorous predominance analysis, brushing aside—in a single paragraph and footnote—the many individualized inquiries that vastly outnumber any common issues.  Among

1

other things, adjudicating class members' claims will require individualized assessments of whether each class member has a "disability," whether each class member was "qualified" for the job in question, whether each class member was subjected to an adverse employment action, and whether Union Pacific has affirmative defenses to each claim, such as whether the employee posed a "direct threat" to public or workplace safety, or whether Union Pacific's decision was justified by business necessity.  The district court's many errors are reflected in its extraordinary trial plan, in which a jury will first decide Union Pacific's ADA liability on a classwide basis—despite the individualized nature of the claims and Union Pacific's defenses—and then the court will convene more than 7,000 "Individual Hearings" to adjudicate the claims of each individual class member. The proposed scheme is squarely at odds with this Court's decision in *Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016).  It also violates Rule 23, the Rules Enabling Act's prohibition on using rules of procedure to abridge or modify substantive rights, and the Constitution.  If nothing else, the need for 7,000-plus "Stage 2" follow-on trials establishes beyond doubt that a class action is not the superior method of adjudicating this dispute.

Finally, the district court committed clear error by certifying a class that includes individuals who lack standing.  In fact, much of the certified class consists of persons who were subjected to a fitness-for-duty examination but were then

2

returned to work and did not suffer *any* adverse employment action.  Also included are thousands of *former* Union Pacific employees who lack standing to seek injunctive relief.

This case is a textbook example of why Rule 23(f) exists.  The public has a strong interest in railroad safety, and in ensuring that the men and women in safety-critical railroad jobs are not at risk of sudden incapacitation, yet the class-certification order gives the plaintiffs leverage to use the coercive power of certification to force changes to Union Pacific's safety policies and practices.  This Court should grant review because the decision below presents important questions of first impression in this Circuit; because the district court's approach is directly contrary to *Hohider*, as well as the Supreme Court's and this Court's repeated warnings that the class-action mechanism cannot be used to modify or expand substantive rights; and because, absent immediate review, Union Pacific will be under immense pressure to resolve this case rather than face potentially extreme liability in a case that has absolutely no business proceeding as a class action.

## QUESTIONS PRESENTED

I.     Whether the district court erred in using the Title VII *Teamsters* framework to relieve plaintiffs of the burden of proving the statutory elements of their ADA disparate treatment claims.

3

II.     Whether the district court failed to conduct a rigorous predominance analysis when it overlooked or ignored the many individualized assessments that preclude determining ADA liability on a classwide basis.

III.    Whether the district court's bifurcated trial plan violates Rule 23, the Rules Enabling Act, and the Constitution by depriving Union Pacific of its right to present affirmative defenses, and by allowing the court or a second jury to reexamine factual determinations made by the first jury.

IV.     Whether the district court erred in certifying a class that includes individuals who lack standing because they did not suffer an adverse employment action and hence were not injured, as well as thousands of former employees who lack standing to seek injunctive relief.

## BACKGROUND

Union Pacific is the largest railroad in the United States.  It has more than 40,000 employees and its tracks span 23 states.  Class Certification Opinion ("Op.") 8.  The named plaintiffs are one current and five former Union Pacific employees who claim among them a variety of conditions, including a pacemaker, epilepsy, cardiomyopathy, post-traumatic stress disorder and chronic substance abuse issues, and unexplained episodes of "syncope" or lightheadedness.  Dkt.259 ¶¶111-49.  The plaintiffs allege that they were removed from service after they experienced a reportable health event and were subjected to a fitness-for-duty

4

examination.  Op.2.  They sued Union Pacific on behalf of a putative class of more than 7,000 current and former employees, alleging disparate treatment under the ADA.  Op.6.  They claim that "through its Fitness-for-Duty program, Union Pacific engaged in a pattern or practice of discrimination by implementing qualification standards and other criteria that screen out individuals with disabilities" in violation of 42 U.S.C. §§ 12112(a), (b)(6).  Op.2.[1]

Union Pacific takes safety very seriously.  Its employees operate 200-ton locomotives pulling dozens of train cars, build and maintain railroad signals and tracks, and control rail traffic over varied terrain and in challenging weather conditions.  Dkt.261-82 ¶8.  Its fitness-for-duty policies reflect guidance from the National Transportation Safety Board, which determined that several high-profile, fatal train accidents resulted from situations where a railroad worker's sudden

---

[1] The ADA prohibits discrimination "on the basis of disability" "against a qualified individual," 42 U.S.C. § 12112(a)—that is, a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," *id.* § 12111(8). "[D]isability" means "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," or "being regarded as having such an impairment." *Id.* §§ 12102(1)(A), (C). Discrimination includes "using qualification standards, employment tests, or other selection criteria that screen out … an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." *Id.* § 12112(b)(6).

incapacitation—caused by conditions ranging from deteriorating vision to sleep apnea to seizures—caused or contributed to the accident.  Dkt.261-74 at 25-26, 44-45; Dkt.261-80 at 11.  In the wake of these investigations, the NTSB strongly recommended that railroads require employees to disclose medical conditions that could cause their sudden incapacitation.  Dkt.261-74 at 49.

Union Pacific's medical program is designed to do exactly that.  It involves three steps: reporting, evaluating, and accommodating.  *First*, employees working in safety-sensitive jobs must notify Union Pacific if they experience a "Reportable Health Event" from a list that includes heart attacks, seizures, loss of consciousness, sleep apnea, and significant vision or hearing changes.  Dkt.261-83 ¶17; Dkt.261-86 at 11.  *Second*, employees who experience a reportable health event—as well as employees who, for example, transfer to a safety-sensitive job, return to work after a prolonged absence, or seek certain industry certifications—undergo a fitness-for-duty examination in which medical professionals evaluate the employee's condition to assess the risk of sudden incapacitation.  Dkt.261-71 ¶¶4-5; Dkt.261-83 ¶¶18-20.  *Third*, if an employee has an unacceptably high risk of sudden incapacitation—which Union Pacific defines as an annual occurrence rate exceeding one percent (based on criteria used by government safety regulators and recommendations of medical associations)—Union Pacific imposes work restrictions.  Dkt.261-71 ¶25; Dkt.261-75.  These restrictions are typically task-

specific, and Union Pacific consults with the employee's supervisor to determine whether the restrictions will conflict with the employee's job duties, and, if so, whether the restrictions can be reasonably accommodated.  Dkt.261-83 ¶¶10-11.  But many employees who undergo a fitness-for-duty evaluation are not subject to any restrictions, and others are returned to work despite their restrictions.  Dkt.259 ¶¶21-24, 154.

The district court certified a class of "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 8, 2014 until the final resolution of this action."  Op.19.  It concluded that the threshold question whether class members were "qualified" individuals with a disability could be postponed until after liability was determined on a classwide basis using the *Teamsters* approach.  Op.7-8.  It held that common questions predominated over individual questions, even though the ADA requires individualized inquiries, and even though the 7,000-plus class members span an immense variety of different jobs, medical conditions, and personal experiences.  Op.13.  And it determined that the case could proceed as a class action even though the class includes numerous persons who did not suffer any adverse employment action because they were returned to work with no restrictions or were accommodated.  *Id*.

The district court certified a "hybrid" class, with "liability and injunctive relief under Rule 23(b)(2)" and "back pay and compensatory damages under Rule 23(b)(3)." Op.17-18. The court adopted plaintiffs' proposed trial plan wholesale. In the first "Liability and Injunctive Relief" stage, the jury will decide "[w]hether Union Pacific has engaged in a pattern or practice of disability discrimination;" "[w]hether Union Pacific's practices were justified by 'direct threat' … or business necessity;" "[w]hether Union Pacific's conduct meets the standard for an award of punitive damages;" and "[w]hether Union Pacific is liable to the named Plaintiffs, as well as their damages;" and the court will decide "[i]njunctive relief." Op.18. The second stage will consist of "Individual Hearings on reinstatement, back pay and compensatory damages, ADA 'qualification,' and individual defenses," including a determination of "the aggregate amount of punitive damages owed and the distribution to each class member." *Id*.

## RELIEF SOUGHT

This Court should grant review of the class certification order under Rule 23(f), order full merits briefing and oral argument, and reverse class certification.

## STANDARD OF REVIEW

Courts of appeals have "unfettered discretion" to allow appeal of a class-certification decision under Rule 23(f), and may do so "on the basis of *any* consideration." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709-10 (2017). An

appeal is warranted when the certification decision: (1) "turns on a novel or unsettled question of law," (2) is "likely dispositive of the litigation," as in a "reverse death-knell" situation where class certification places substantial pressure on the defendant to settle the case, *id.* at 1710, or (3) contains a "*substantial weakness*," *Prado-Steiman v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000), or "manifest[] erro[r]," *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002).

## REASONS FOR GRANTING THE PETITION

The district court ran roughshod over Rule 23 and the Rules Enabling Act by certifying a sprawling class of current and former employees with a broad array of medical conditions, and who held a variety of jobs, irrespective of whether plaintiffs can satisfy on a classwide basis the ADA's requirements of disability, qualification, and failure to accommodate, and irrespective of whether class members actually suffered any adverse employment action.

## I. This Case Presents Important Questions Concerning Class Actions Under The Americans With Disabilities Act.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation omitted). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis," that each requirement of Rule 23 has been met. *Id.* at 350-51 (quotation omitted). "Frequently that

9

'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," *id.* at 351, and "must involve consideration of what the parties must prove," *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006).

> **A.** **The District Court Improperly Relieved Plaintiffs Of The Burden Of Proving The Statutory Elements Of Their ADA Claims.**

1. "To establish a prima facie case of disability discrimination" under the ADA, a plaintiff "must show that (1) he has a disability within the meaning of the … ADA, (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of h[is] disability." *Brunckhorst v. City of Oak Park Heights*, No. 17-3238, 2019 WL 419178, at *4 (8th Cir. Feb. 4, 2019) (punctuation omitted).

Each of these three elements requires individualized proof. "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). Likewise, "[w]hether a plaintiff is 'otherwise qualified' requires a highly fact-sensitive and individualized inquiry, resulting in a case-by-case determination." *Carlson v. InaCom Corp.*, 885 F. Supp. 1314, 1320 (D. Neb. 1995). And where, as here, the class is defined as anyone subjected to an employment-related policy (rather than anyone adversely affected by the policy), determining whether each class member suffered an adverse employment action also requires individualized inquiries.

10

The district court's class-certification order allows plaintiffs to establish classwide ADA liability without proving the elements of their claims. They are excused from proving, as a predicate to liability, that any class member actually has a disability or was qualified to perform the essential functions of his or her job with or without a reasonable accommodation. Nor will plaintiffs even need to show that a single class member suffered an adverse employment action. Under the class-certification order, "the jury will decide" "[w]hether Union Pacific has engaged in a pattern or practice of disability discrimination" without class members having to prove *any* of the three required elements of an ADA disability discrimination claim. Op.18.

2.     The district court concluded that all of this would be permissible under the *Teamsters* framework—a two-stage process the Supreme Court approved for use in Title VII pattern-or-practice cases. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977). Under the *Teamsters* framework, the plaintiffs in the first "liability" phase try to establish that "discrimination was the company's standard operating procedure." *Dukes*, 564 U.S. at 352 n.7 (quotation omitted). If they succeed, "that showing will support a rebuttable inference that all class members were victims of the discriminatory practice, and will justify an award of prospective relief, such as an injunctive order against the continuation of the discriminatory practice." *Id.* (quotation omitted). When the plaintiffs seek

11

"individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, a district court must usually conduct additional proceedings … to determine the scope of individual relief" in a second "remedial" phase. *Id.* at 366 (quotation omitted).

This Court has never endorsed using the *Teamsters* framework in a private-plaintiff ADA class action, and the district court's approach directly conflicts with the Third Circuit's decision in *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009). Just as in this case, the *Hohider* plaintiffs had challenged a company's medical policy under the ADA. And just as in this case, the district court certified a class of thousands, reasoning that by using a *Teamsters* approach, it could determine at the "liability" stage whether the defendant engaged in a pattern or practice of unlawful discrimination, without evaluating whether class members were "qualified" under the ADA. The Third Circuit reversed. The court explained that "it [was] not possible to reach a classwide determination of unlawful discrimination … without undertaking analysis of qualification, as it is defined by the ADA." *Id.* at 177. "[A]dopting the *Teamsters* method of proof does not obviate the need to consider the ADA's statutory elements." *Id.* And because the statutory elements required to establish the defendant's liability to any class member under the ADA "include individualized inquiries that cannot be addressed in a manner consistent with Rule 23, … the class cannot be certified." *Id.* at 184.

The district court in this case replicated the precise error of the district court in *Hohider*. Rule 23 cannot be used to circumvent the substantive elements of the ADA and relieve plaintiffs of the burden of proving their case. "It is the ADA … and not the *Teamsters* evidentiary framework, that controls the substantive assessment of what elements must be determined to prove a pattern or practice of unlawful discrimination in this case." *Hohider*, 574 F.3d at 185.[2]

The Supreme Court has repeatedly reminded courts to heed the Rules Enabling Act in the class-action context, warning them against using the procedural class-action device in a way that would "abridge, enlarge or modify any substantive right" of any party. 28 U.S.C. § 2072(b); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997). Yet that is precisely what the district court did here when it relieved plaintiffs of the burden of proving the basic elements of an ADA case.

---

[2] The district court also erred in supposing it could circumvent the requirements of the ADA and Rule 23 by certifying a purported "hybrid" class in which issues that will determine the distribution of damages are adjudicated under Rule 23(b)(2). *See Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012).

13

### B.   The District Court's Superficial Discussion Of Predominance Ignored Critical Differences Among Class Members.

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (quotations omitted).  Predominance "is not satisfied if individual questions … overwhelm the questions common to the class." *Id.* at 478-79 (quotation omitted).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* at 479 (quotation omitted).

The district court's predominance analysis—four sentences and a footnote, Op.13-14—fell far short of the "rigorous" analysis this Court has mandated. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).  The court's predominance discussion utterly failed to address, let alone engage, the extensive record evidence establishing that common issues do *not* predominate, and the numerous individual issues that will need to be resolved in light of the many manifest differences among class members and their claims, including:

14

Medical conditions and extent of impairment.   Determining whether a person has a "disability" under the ADA requires assessing whether they have "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. §§ 12102(1)(A).

Here, the various medical conditions or reportable events experienced by class members vary dramatically, as does the extent to which each class member's condition limits his or her major life activities, thus making individualized inquiries necessary.  For example, while Plaintiffs Harris and Taylor both suffer from epilepsy, at the time of their respective fitness-for-duty evaluations, Harris had been seizure-free for years, whereas Taylor had recently experienced more than ten seizures within a two-month period.  Plaintiff Miller has cardiomyopathy, but alleges he is not limited by his condition.  Plaintiff Mount has a pacemaker, but testified he has "no limitations" and is in "excellent shape."  Plaintiff Zinn has post-traumatic stress disorder and chronic substance abuse issues, resulting in recurring nightmares, hallucination, anger, depression, and anxiety.  Plaintiff Baker admits he has no actual disability, having experienced unexplained episodes of "syncope" or lightheadedness; instead, he claims he is merely "regarded as" having a disability.  Dkt.259 ¶¶111, 118, 122-23, 128, 136, 144-46.

And these are just the named plaintiffs.  The 7,000-plus additional class members have a vastly broader universe of conditions or events that led to a

15

fitness-for-duty examination, such as suffering a stroke, Dkt.248-33 at 41, 82, 88; traumatic head or brain injuries, *id.* at 105, 118; heart diseases and failures, *id.* at 97, 111; vision deficiencies, *id.* at 5, 17; hearing loss, *id.* at 11; fainting spells, *id.* at 8; and losing consciousness at work, *id.* at 38, 70.

"Qualification" for different jobs. Determining whether a person with a disability is "qualified" requires an individualized assessment of the person's capabilities in light of the specific requirements of the particular job.

Here too, there is wide variation in the jobs at issue for each of the 7,000-plus class members. Plaintiff Harris worked as a mechanical service operator whose duties included moving and servicing inbound locomotives and driving a forklift. Plaintiff Taylor worked as a signalman who installed, repaired, and maintained railroad signals and crossing warning devices. Plaintiff Zinn operated a ballast tamper machine, which picks up rail ties and tamps the rock beneath the track to ensure sturdiness. Dkt.259 ¶¶111-12, 117, 143. Other class members include locomotive engineers, Dkt.248-33 at 11, 65; conductors, *id.* at 46, 49; employees who worked on train cars, brakes, and switches, *id.* at 52, 68, 105; a welder, *id.* at 29; foremen, *id.* at 32, 57, 111; crane and boom truck operators, *id.* at 41, 70; and a locomotive electrician, *id.* at 118.

Reasonable accommodations vary. Determining whether a reasonable accommodation would have allowed an employee with a disability to perform the

16

essential functions of the job requires an individualized inquiry that examines the nature and extent of the employee's disability, the requirements of the job, and the reasonableness of the proposed accommodation. For example, Plaintiff Harris could not be reasonably accommodated because his work restrictions prohibited him from operating company vehicles or on-track equipment, and there are no mechanical service operator jobs that do not require operating such equipment. Dkt.259 ¶115.

The prevalence of so many individual issues—all of which must be answered to determine the threshold question whether a class member is a "qualified individual" with a "disability" under the ADA—illustrates that plaintiffs cannot even satisfy Rule 23(a)'s requirements of commonality and typicality. The "more demanding" predominance test, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013), plainly is not met. Remarkably, despite this Court's requirement that "[i]n making its [predominance] determination, the district court *must* undertake a 'rigorous analysis' that includes examination of what the parties would be required to prove at trial," *Avritt*, 615 F.3d at 1029 (emphasis added), the district court did not so much as acknowledge the substantial differences among class members, many of whom do not even have a "disability" or are not "qualified" under the ADA.

This Court rejected a similarly cavalier approach to predominance in *Ebert*. There, the district court certified a class and bifurcated the trial plan into an initial liability stage followed by a damages stage consisting of individualized hearings. This Court reversed, explaining that "by bifurcating the case and narrowing the question for which certification was sought, the district court limited the issues and essentially manufactured a case that would satisfy the Rule 23(b)(3) predominance inquiry." *Ebert*, 823 F.3d at 479. So too here. Determining classwide liability at the first stage before holding individual hearings to determine whether each plaintiff can actually prove the statutory requirements of disability, qualification, and accommodation "complicates the litigation of the elements necessary to resolve the plaintiffs' claims" and "ultimately unravels and undoes any efficiencies gained by the class proceeding because many individual issues will require trial." *Id*.

### C.    The Trial Plan Is Unconstitutional And Unmanageable.

The district court's bifurcated trial plan deprives Union Pacific of its due process right to present individual defenses and allows the district court or a second jury to reexamine facts in violation of the Seventh Amendment. The trial plan also violates Rule 23(b)(3)'s superiority and manageability requirements.

1.    A "class cannot be certified on the premise that [the defendant] will not be entitled to litigate its … defenses to individual claims." *Dukes*, 564 U.S. at

18

367.   For each class member, and for each incident of alleged discrimination, Union Pacific must be permitted to "present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quotation omitted).

Determining liability on a classwide basis "deprives [Union Pacific] of [its] right to litigate statutory defenses to individual claims." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048 (2016).  For example, Union Pacific will be unable to argue that a particular employment action was permissible because the person presented a "[d]irect [t]hreat"—that is, "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3).  Likewise, Union Pacific will be deprived of its right to argue that a particular employment action was justified by "business necessity."  *Id.* § 12112(b)(6).  Although the district court stated that in the first stage, the jury will decide whether Union Pacific's practices "were justified by" direct threat or business necessity, Op.18, these are necessarily individualized defenses that cannot be decided on a classwide, one-size-fits-all basis.  *See EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (direct threat requires individualized analysis); *Belk v. Sw. Bell Tel. Co.*, 194 F.3d 946, 951 (8th Cir. 1999) (business necessity defense requires individualized analysis).  Requiring Union Pacific to prove as a general matter that thousands of individual employment actions were *all*

justified by direct threat or business necessity effectively renders these defenses a nullity.

The trial plan will also allow the district court or a second jury to reexamine facts tried by the jury during the first stage, in violation of the Seventh Amendment. Indeed, the trial plan expressly provides that Union Pacific's defenses, including direct threat and business necessity, will be decided by the first jury—and will then be re-examined and decided again by the court or a second jury. Op.18. This internally contradictory, patently unconstitutional approach violates Union Pacific's Seventh Amendment right "to have juriable issues determined by the first jury … not reexamined by another finder of fact." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (holding bifurcated class-action trial plan unconstitutional). Moreover, allowing the jury to determine liability for punitive damages at the end of the first stage is impermissible, as punitive damages cannot be imposed absent a finding of liability to a specific plaintiff. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998).

2.    The trial plan itself powerfully demonstrates that a class action is not the superior method of adjudicating these claims, nor would these proceedings be manageable, as Rule 23(b)(3) requires. The contemplated Stage 2 will consist of over 7,000 "Individual Hearings" that would try portions of the Stage 1 case all over again. Each Stage 2 hearing will decide "reinstatement, back pay and

compensatory damages, ADA 'qualification,' and individual defenses," not to mention "[i]n the event of a punitive damages finding, the aggregate amount of punitive damages owed and the distribution to each class member." Op.18. These subsequent trials will take years, destroying any arguable efficiencies resulting from the class-action device.

## II. The District Court's Certification Of A Class Containing Persons Who Lack Standing Is An Independent Error That Warrants Review.

Because "[t]he constitutional requirement of standing is equally applicable to class actions," a "class cannot be certified if it contains members who lack standing." *Avritt*, 615 F.3d at 1034. "In order for a class to be certified, *each member* must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (emphasis added). Thus, a "class must … be defined in such a way that anyone within it would have standing." *Avritt*, 615 F.3d at 1034 (quotation omitted). Here, the certified class includes at least two categories of class members who indisputably lack standing: employees who suffered no adverse employment action as a result of the challenged medical policies, and former employees seeking injunctive relief.

1. The certified class consists of "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event

21

at any time" since September 18, 2014.  Op.19.  But an employee does not acquire ADA standing simply by undergoing a fitness-for-duty examination.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (constitutional standing requires "concrete" or "actual[]" injury); *Davis v. Anthony, Inc.*, 886 F.3d 674, 678 (8th Cir. 2018) (rejecting standing to sue for ADA violations "that never injured" plaintiff).

In this case, the numerous class members who underwent a fitness-for-duty examination and were released to work without restrictions have not suffered any ADA injury.  Plaintiffs themselves argue that the "available data reveals" that only 3,145 of the 7,723 class members "were designated as not cleared to work or were issued work restrictions as a result of their fitness-for-duty determinations." Dkt.241 at 15 (citing Dkt.248-34).  The rest, by implication, were *not* "subject to adverse [employment] outcomes"—and therefore were not injured.  *Id.*  Moreover, not every person who underwent a fitness-for-duty examination is a qualified individual with a disability; those individuals likewise "do[] not have standing to challenge" employment policies under the ADA.  *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001).  In short, "[s]ome of the [class] members likely have standing, and some likely do not."  *Halvorson*, 718 F.3d at 779.  A class cannot be certified when that is true.  *Id.*

The district court appeared to recognize the obvious problems in certifying a class containing uninjured persons.  It acknowledged Union Pacific's evidence that

22

"certain employees were … paid during their leave, and reinstated thereafter" and thus "have no injury in fact." Op.13. But after noting this evidence, and citing this Court's decisions holding that a class cannot be certified unless *all* class members have standing, the district court inexplicably resolved the issue in a single, manifestly erroneous sentence: "The plaintiffs as a whole do in fact allege and have injury." Op.14.

2.     A second category of class members lacks standing for a separate reason. The certified class consists of "[a]ll individuals who have been" subject to a fitness-for-duty examination, a group that encompasses "former employees," including five of the six named plaintiffs, for purposes of seeking injunctive relief under Rule 23(b)(2). Op.16-19. But plaintiffs "no longer employed by [the defendant company] lack standing to seek injunctive or declaratory relief against its employment practices." *Dukes*, 564 U.S. at 364. In *Dukes*, the Supreme Court held that before certifying a class seeking injunctive relief, a district court must "eliminate *all* former employees from the certified class." *Id*. at 364-65. The district court did not so here. This error alone warrants review and reversal.

# CONCLUSION

The petition for permission to appeal should be granted.

February 19, 2019                    Respectfully submitted,

                                     /s/ Thomas H. Dupree Jr.
Scott Parrish Moore                  Thomas H. Dupree Jr.
Christopher R. Hedican               Eugene Scalia
Allison D. Balus                     Naima L. Farrell
Leigh Campbell                       Aaron Smith*
BAIRD HOLM LLP                       GIBSON, DUNN & CRUTCHER LLP
1700 Farnam Street, Suite 1500       1050 Connecticut Avenue, N.W.
Omaha, NE 68102-2068                 Washington, DC 20036
(402) 344-0500                       (202) 955-8500
                                     tdupree@gibsondunn.com
                                     *Admitted only in Alabama

24

## Certificate of Service

Pursuant to Federal Rule of Appellate Procedure 25 and Eighth Circuit Rule 25A(e), I hereby certify that on February 19, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Thomas H. Dupree Jr.
Thomas H. Dupree Jr.

Dated:  February 19, 2019

## Certificate of Compliance

I hereby certify that the document complies with the word limit of Fed. R. App. P. 5(c)(1), excluding the Rule 32(c)(2) exceptions and accompanying documents required by Rule 5(b)(1)(E), because it contains 5,199 words.

/s/ Thomas H. Dupree Jr.
Thomas H. Dupree Jr.

Dated: February 19, 2019