# Nichols Kaster
## ATTORNEYS AT LAW

**Cyle A. Cramer**
Direct: (612) 256-3274
Fax: (612) 338-4878
ccramer@nka.com

4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

July 7, 2026

**VIA EMAIL ONLY**

Magistrate Judge Ryan C. Carson
Roman L. Hruska Federal Courthouse
111 South 18th Plaza
Omaha, NE  68102
carson@ned.uscourts.gov

> Re:    ***Todd DeGeer v. Union Pacific Railroad Co.***
> **Case No. 8:23-cv-00010-RFR-RCC (D. Neb.)**

Your Honor:

Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition Topics 1-3 ask Union Pacific to identify a witness to testify regarding the company's Americans with Disability Act ("ADA") and disability discrimination policies and practices and how those policies were applied, what steps did Union Pacific take to attempt compliance with the ADA, and what corrective actions were taken towards ADA compliance. *See* **Exhibit A**. These topics were drafted specifically in accordance with the Eighth Circuit Model Civil Jury Instructions on punitive-damages liability. The Model Instruction states that a defendant acted with malice or reckless indifference if the defendant "knew that the [removal from service] was in violation of the law prohibiting disability discrimination, or acted with reckless disregard of the law." Eighth Circuit Manual of Model Civil Jury Instructions § 9.72 (2025). Fact discovery related to whether Union Pacific knew of the law, had policies related to the law, and whether Union Pacific acted with reckless disregard of the law in the application of those policies goes directly to the punitive-damages standard and is therefore squarely within the scope of Rule 30(b)(6). *See Otting v. J.C. Penny Co.*, 223 F.3d 704, 711 (8th Cir. 2000) *quoting Kolstad v. American Dental Assoc.*, 527 U.S. 526, 119 S.Ct. 2118, 2124 (1999) ("An employer who 'discriminate[s] in the face of a perceived risk that its actions will violate federal lay [may] be liable in punitive damages.'").

Union Pacific objects contending that Topics 1–3 are better suited for written discovery, seek impermissible ADA-interpretation testimony, and risk invading attorney-client privilege and work-product protections. *See* **Exhibit B**. But the topics seek factual testimony regarding Union Pacific's policies, practices, training, oversight, implementation, and appeals processes—not attorney mental impressions. Plaintiff is entitled to discover not only what policies Union Pacific adopted, but how those policies operated in practice. Questions concerning whether policies existed, how they were applied, and what steps were taken to enforce them do not implicate privilege or work product. To the extent a specific question seeks privileged information, Union Pacific may object to it during the deposition, but it cannot use privilege as a basis to avoid testimony on nonprivileged corporate practices altogether. Any such inquiry requires an individualized assessment. *See Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 132

1

F.R.D. 267, 280 (D. Neb. 1989). Even so, "it is clearly not the law that a fact is not discoverable because a lawyer communicated the fact to the client." *Id.*

Union Pacific additionally refuses to designate a witness for Plaintiff's Topic 8 which seeks testimony related to the interpretation, implementation, and objectives of incentive compensation plans for medical directors involved in the decision to remove Plaintiff from service. The record already shows that Union Pacific created goals, metrics, and measures of progress for its Health & Medical Services department. ECF No. 130-4 at 2. Those metrics explicitly identify "G55 initiatives" and a goal that includes "head count requirements." *Id.* Additionally, the performance review of Union Pacific's chief medical officer, Dr. John Holland, included the goal of "[r]evise Color Vision Field Test protocols and processes." ECF No. 130-20, at 3. Union Pacific objects, stating, "[t]here is no legal basis to seek a corporate representative's testimony regarding the compensation plans…." *See* **Exhibit B**. This is unsupported because how Union Pacific's compensation structures aligned with these identified (therefore relevant) goals and metrics bear directly on motive and decision-making, and courts routinely recognize such evidence as a core and discoverable subject.[1] Because these Rule 30(b)(6) topics seek testimony that goes directly to Union Pacific's actual policy practices and the incentive structures driving motive—all central to punitive-damages liability—Plaintiff intends to seek a motion to compel, requesting the Court compel Union Pacific to designate and prepare a witness to testify on these matters.

Sincerely,

**NICHOLS KASTER, PLLP**

Cyle A. Cramer

Enc.
cc: Counsel of Record

---

[1] *Bogensberger v. USAA Cas. Ins. Co.,* No. 4:21-CV-04064-KES, 2024 WL 3415892, at *10 (D.S.D. July 15, 2024), *quoting Hurley v. State Farm Mut. Auto. Ins. Co.*, No. CIV. 10–4165–KES, 2012 WL 1600796, at *4 (D.S.D. May 7, 2012) ("'It is well established in this district that information about bonuses and increases for upper-level employees is generally discoverable….'"); *See also Voelker v. BNSF Ry. Co.*, 2020 WL 6149553, *7 (D. Mont. 2020) (CV 18-172-M-DLC) (where the court compelled the production of performance metrics, noting its repeated orders doing so: "[i]n resolving these discovery issues, the Court walks on well-trodden ground.").

2

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| Todd DeGeer, | Case No. 8:23-cv-00010-RFR-RCC |
| Plaintiff, | |
| v. | **THIRD AMENDED NOTICE OF TAKING DEPOSITION OF DEFENDANT PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| Union Pacific Railroad Company, | |
| Defendant. | |

To: Defendant and Its Counsel of Record:

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant is required to designate and fully prepare one or more officers, directors, managing agents or other person who consent to testify on behalf of Defendant and whom Defendant will fully prepare to testify regarding the following designated matters and as to such information that is known or reasonably available to Defendant's organization.

Plaintiff will take the deposition of Defendant's designee(s) on **June 22, 2026** at **11:00 a.m.** for **Topic 5 (Jason Taullie)** and on a **date and time to be determined by the parties** for **Topics 1, 2, 3, and 8**[1] and continuing thereafter until completed. The deposition will proceed before a qualified notary public, or some other officer qualified by law, and will recorded by audio and stenographic means.

---

[1] Plaintiff understands that Defendant currently objects to Topics 1, 2, 3, and 8 and will raise the objections of Topics 1 and 8 before Magistrate Judge Carson. Plaintiff reserves the right to raise the objections of Topics 2 and 3 at a later time.

1

The deposition will proceed remotely, with the witness and counsel to appear via remote video access and will be facilitated by Paradigm Reporting/Veritext (150 S. 5th Street, Suite 1775, Minneapolis, MN 55402, (612) 339-0545, calendar-paradigm@vertitext.com).

Plaintiff reserves the right to conduct this deposition using a paperless exhibit display process called Exhibit Share or virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

**DEPOSITION TOPICS**

Defendant's designee(s) shall be prepared to answer questions about the following:

1.    Union Pacific's Americans with Disabilities Act and disability discrimination policies and practices that were in place in 2017, including any reasonable accommodation and interactive process procedures, qualification standards and safety-based determinations, training and oversight, and how those policies were applied to conductor color-vision FRA certifications, work restrictions, and appeals of those work restrictions.

2.    What steps were taken to make Union Pacific's "Light Cannon" and color vision field test that was in place in 2017 comply with the Americans with Disabilities Act.

3.    What corrective actions were taken from the time the "Light Cannon" and color vision field test that was in place in 2017 went into effect to today, has Union Pacific taken to make the "Light Cannon" and color vision field test comply with the Americans with Disabilities Act.

4.    Union Pacific's safety rules, procedures, and required crew practices in effect between 2017 for interpreting and complying with signal indications and for ensuring proper train

2

movement under track authority, including required communication, verification, and "when in doubt" procedures intended to prevent signal or authority violations.

5.     Union Pacific's conductor certification program as it related to color-vision, in effect in 2017, including all policies, procedures, and the specific documents submitted to and/or received from Federal Railroad Administration (FRA) related to approval of the color-vision testing protocol pursuant to Title 49 CFR § 242.103.

6.     Union Pacific's policies and procedures related to Union Pacific's FRA certification program appeal procedures, including all policies and standard required communications and documents provided to employees pursuant to those procedures that were applicable to color-vision certification decisions for the program in place at Union Pacific in 2017.

7.     The development, purpose, and implementation of the "Light Cannon" and color vision field test that was in place in 2017, including Union Pacific's efforts towards assuring the test was valid, reliable, and comparable.

8.     Interpretation, implementation, and goals of the incentive compensation plans for the Chief Medical Director and Associate Medical Directors who played a role in removing Plaintiff from service.

3

Date: May 22, 2026

**NICHOLS KASTER, PLLP**

s/Cyle A. Cramer
James H. Kaster* (MN 53946)
      kaster@nka.com
Cyle A. Cramer* (MN 0402644)
      ccramer@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878

**LOURIS MARSHALL O'BRIEN, P.A.**

Jacob C. Harksen* (MN 0400097)
      jharksen@lourismarshall.com
120 South Sixth Street, Suite 2400
Canadian Pacific Plaza
Minneapolis, MN 55402
Telephone: (612) 333-5831
Fax: (612) 342-2613

*\* admitted in D. Neb.*

**ATTORNEYS FOR PLAINTIFF**

4

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was sent via email on May 22, 2026 to the following:

Scott P. Moore
spmoore@bairdholm.com

Mark J. Goldsmith
mgoldsmith@bairdholm.com

Jimmie L. Pinkham, III
jpinkham@bairdholm.com

s/Cyle A. Cramer
Cyle A. Cramer

# Exhibit B



**Jimmie L. Pinkham III**

1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
Tel: 402.344.0500
Fax: 402.344.0588
Direct: 402.636.8359
jpinkham@bairdholm.com
www.bairdholm.com
Admitted in: NE & IA

March 9, 2026

**VIA EMAIL**

James H. Kaster
kaster@nka.com
Cyle A. Cramer
ccramer@nka.com
Nichols Kaster, PLLP
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402-2242

Re:    *DeGeer v. Union Pacific Railroad Company*, 4:23-cv-00010-RFR-RCC

Dear Mr. Kaster and Mr. Cramer:

I am writing in response to Plaintiff's Notice of Taking Deposition pursuant to Rule 30(b)(6) of Union Pacific Railroad ("Union Pacific"), delivered via email on March 5, 2026. Union Pacific will agree to produce a corporate representative to testify regarding topics 4, 5, and 7; however, Union Pacific cannot agree to produce a representative to testify regarding the remaining topics. Union Pacific's objections to and concerns regarding the topics are as follows:

1. Union Pacific's Americans with Disabilities Act and disability discrimination policies and practices that were in place in 2017, including any reasonable accommodation and interactive process procedures, qualification standards and safety-based determinations, training and oversight, and how those policies were applied to conductor color-vision FRA certifications, work restrictions, and appeals of those work restrictions.

First, Union Pacific has already produced its EEO Policy (UP_DEGEER_001980) and its Medical Rules (UP_DEGEER_002107). Any topic better suited to written discovery is objectionable. *See, e.g., Blackrock Allocation Target Shares: Series S*

Page 2

*Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14CV09371KPFSN, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017) ("a Rule 30(b)(6) deposition should not be a 'memory contest' of topics better suited to a written response or a supplemental document production…. A court should strike notice topics that would result in a witness merely testifying to information readily available through document production.").

Further, Union Pacific objects to this request as vague, overbroad, unduly burdensome, and not describing with reasonable particularity the matters for examination. Specifically, Union Pacific is unclear what the topics seeks when it asks "how those policies were applied to conductor color-vision FRA certification, work restrictions, and appeals of those work restrictions." Color vision is but one aspect of FRA certification, so there is no such thing as "conductor color-vision FRA certification. Also, "appeals of those work restrictions" is unclear. Union Pacific complied with FRA regulations in allowing employees to submit rebuttal information regarding a pending denial of FRA certification; however, employees must appeal their denial directly to the FRA, not Union Pacific.

Finally, this request effectively asks how Union Pacific applied the ADA to its "conductor color vision FRA certifications, work restrictions, and appeals of those work restrictions." Notwithstanding the issues described above, this topic seeks impermissible testimony interpreting and applying the ADA. See *Schyvincht v. Menard, Inc*., No. 18 CV 50286, 2019 WL 3002961, at *3 (N.D. Ill. July 10, 2019) (granting motion for protective order with respect to a 30(b)(6) topic that impermissibly sought a legal opinion from a lay witness regarding the application of a legal term of art); See also *Dagdagan v. City of Vallejo*, 263 F.R.D. 632 (E.D. Cal. 2010) (finding that, though Rule 30(b)(6) deponent was required to answer questions about corporate policies, he was not required to answer whether practices or documents reflected compliance or non-compliance with those policies).

2. What steps were taken to make Union Pacific's "Light Cannon" and color vision field test that was in place in 2017 comply with the Americans with Disabilities Act.

3. What corrective actions were taken from the time the "Light Cannon" and color vision field test that was in place in 2017 went into effect to today, has Union Pacific taken to make the "Light Cannon" and color vision field test comply with the Americans with Disabilities Act.

Union Pacific objects to topics 2 and 3 because they seek to invade attorney client privilege and the attorney work product doctrine. By asking what steps Union Pacific took to "comply with the [ADA]," the request essentially asks Union Pacific to reveal its legal counsel's interpretation of the ADA and application thereof to Union Pacific's light cannon device and CVFT. While corporate policies that serve as a reference or instructional guide to corporate employees are discoverable under 30(b)(6), whether the corporations' practices conformed with those policies or complied with applicable laws is not discoverable. *Abarca v. Werner Enters., Inc.*, 2024 WL 756288, at *7 (D. Neb. Feb. 23,

Page 3

2024). Union Pacific also objects to these topics as vague and ambiguous to the extent it does not seek Union Pacific's interpretation and application of law to its policies and practices because Union Pacific can derive no other meaning from this topic.

6. Union Pacific's policies and procedures related to Union Pacific's FRA certification program appeal procedures, including all policies and standard required communications and documents provided to employees pursuant to those procedures that were applicable to color-vision certification decisions for the program in place at Union Pacific in 2017.

Union Pacific objects to topic 6 because it is vague, ambiguous, and does not describe with reasonable particularity the matters for examination. Union Pacific is not clear on what "FRA certification program appeal procedures" means in this request. There is a procedure under FRA regulations for challenging a railroad's certification program submission. There is also a procedure for challenging a railroad's denial of certification or recertification. Those procedures are codified in the FRA safety regulations. Further, Union Pacific objects to this topic as duplicative, cumulative, and not proportional to the needs of the case. To the extent this request seeks testimony regarding FRA appeal procedures for challenging a railroad's denial of certification or recertification, this topic is duplicative of Request for Production Nos. 47 and 48. To the extent this request seeks testimony regarding Union Pacific's CVFT appeals committee, which reviewed rebuttals submitted by employees after receiving a pending denial of certification or recertification, this topic is duplicative of Request for Production Nos. 53 and 54 and Interrogatory No. 19. Union Pacific will not produce a witness to testify regarding topics previously covered by interrogatories. See *Wilbur-Ellis Co. LLC v. Gompert*, 2023 WL 8806573, at *3 (D. Neb. Dec. 20, 2023), *aff'd*, 2024 WL 665095 (D. Neb. Feb. 16, 2024) (holding that 30(b)(6) deposition topics similar to prior requests for production and requests for admission are duplicative and inappropriate for a 30(b)(6) deposition).

7. The development, purpose, and implementation of the "Light Cannon" and color vision field test that was in place in 2017, including Union Pacific's efforts towards assuring the test was valid, reliable, and comparable.

As noted above, Union Pacific is willing to produce corporate representatives to testify regarding topic 7; however, the topic as it is written is extremely broad. The development and implementation of the color vision field test utilizing the light cannon device was a multi-faceted process involving many people across multiple departments. Union Pacific proposes breaking down topic 7 into narrower categories. For example, Dr. Holland could testify regarding Health & Medical Service's involvement in the development, implementation, and validation efforts, while a different witness could testify regarding Operations' involvement. Union Pacific is open to exploring narrower topics based upon the information Plaintiff seeks to obtain.

Page 4

8.  Interpretation, implementation, and goals of the incentive compensation plans for the Chief Medical Director and Associate Medical Directors who played a role in removing Plaintiff from service.

Union Pacific objects to topic 8 because it is not reasonably calculated to lead to the discovery of admissible evidence. There is no legal basis to seek a corporate representative's testimony regarding the compensation plans of the Chief Medical Officer or Associate Medical Director who ultimately denied Plaintiff's FRA-required conductor certification based upon Plaintiff's inability to meet the minimum color vision thresholds or pass the color vision field test. Union Pacific further objects to this topic because it is overbroad and temporally unlimited.

Please let us know whether Plaintiff will pursue topics 1-3, 6, and 8 as they are written so we can prepare a draft email to the Court seeking an informal conference prior to moving for a protective order. With regard to topics 4 and 5, we will work to identify a corporate representative to testify on those matters.

Respectfully,


/s/ Jimmie L. Pinkham III
Jimmie L. Pinkham III
FOR THE FIRM

7087881.1