IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TODD DEGEER,<br>Plaintiff,<br>U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Plaintiff-Intervenor,<br>vs.<br>UNION PACIFIC RAILROAD CO.,<br>Defendant. | **8:23CV10**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the court on the United States Equal Employment Opportunity Commission's ("EEOC") Motion to Intervene. (Filing No. 188). The matter was referred to the undersigned for disposition pursuant to 28 U.S.C. §636(b)(1)(a), which permits a magistrate judge to hear and determine any pretrial matter pending before the court.[1] For the following reasons, the court finds the motion to be untimely and it will be denied.

## I. BACKGROUND

Plaintiff Todd DeGeer asserts disability discrimination claims against his former employer Union Pacific Railroad for alleged violations of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. The matter has been pending for some time, in fact as early as 2016. Plaintiff initially joined as a class member in a class action disability lawsuit

[1] A motion to intervene is considered a pretrial matter and "is not considered dispositive of a claim or defense of a party." *Robinson v. Eng*, 148 F.R.D. 635, 644 (D. Neb. 1993) (*see also Jomes v. Casey's General Stores, Inc.*, 2010 WL 11614139 *3 (S.D. Iowa Feb. 18, 2010) ("Motions to intervene are generally treated as non-dispositive matters, ripe for a determinative adjudication by a magistrate judge").

against Union Pacific in February 2016, challenging the railroad's fitness-for-duty and vision testing programs. (Filing No. 1, ¶4 and *Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16cv381 (D. Neb.)). He pursued this individual action after the Eighth Circuit reversed the district court's class certification determination on March 24, 2020. *See Harris et al. v. Union Pacific Railroad Co.*, 953 F.3d 1030 (8th Cir. 2020).

Plaintiff filed a charge of discrimination with the EEOC on May 7, 2020. (Filing No. 188 ¶6). The EEOC investigated and proceeded with the conciliation process with Union Pacific. (Filing No. 188 ¶8). Those efforts proved unsuccessful and the EEOC issued a right-to-sue letter to Plaintiff on January 5, 2023. (Filing No. 188 ¶10). Plaintiff filed this action the very next day, on January 6, 2023. (Filing No. 1). The EEOC separately filed a lawsuit against Union Pacific in Minnesota on September 29, 2023, on behalf of a number of other individuals arising out of the railroad's color vision testing. *See EEOC and Eric Aragon et al. v. Union Pacific Railroad Co.*, Case No. 23-cv-3030-ECT-DLM (D. Minn.).

The matter pending with this court has produced a significant number of filings, including multiple amendments to the case progression order, requests to stay and extend deadlines, and a pending summary judgment motion that was filed on March 4, 2026, and which has been fully briefed. The parties have been through seven amended case progression orders and many of those deadlines have now expired, including the deadline to amend the pleadings or add parties, the deadline to complete written discovery, and the deadline to file motions to compel. (Filing No. 175). The deadline to complete depositions in the case has also been extended many times and now expires in just two weeks, or on September 30, 2026. (Filing No. 199). The court also granted Union Pacific's Motion for Protective Order months ago, prohibiting EEOC attorneys from attending depositions in the case. (Filing No. 125, filed April 16, 2026).

As to that motion, the court sympathized with Union Pacific's argument that the EEOC could not assist Plaintiff's counsel "without entering an appearance and subjecting themselves to the court's supervisory authority, and because the presence of attorneys for a non-party federal agency would serve to annoy, harass, or oppress the opponent." (Filing

No. 125 at 5). The court concluded that it is "unclear exactly what the EEOC's purpose is in attending the virtual deposition, but based upon representations of counsel, it is reasonable to conclude that the presence of an EEOC attorney, an extension of the federal government with no connection to this case, could constitute annoyance, harassment, or oppression sufficient to justify a protective order." (Filing No. 125 at 5). Plaintiff did not object to the court's order and the EEOC made no effort to intervene at that time.

## II. ANALYSIS

The EEOC seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1), which provides that a court may permit, on timely motion, anyone to intervene who "is given a conditional right to intervene by federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." The EEOC also seeks permissive intervention pursuant to Fed. R. Civ. P. 25(b)(2), which provides that a court may permit, on timely motion, a federal agency to intervene if a party's claim is based on "a statute or executive order administrated by the officer or agency" or "any regulation, order, requirement, or agreement issued or made under the statute or executive order."

As a threshold matter, any successful motion to intervene must be timely filed. "The timeliness of a motion to intervene is determined from the totality of the circumstances" and is a decision within the district court's discretion. *Winbush v. Iowa*, 66 F.3d 1471, 1479 (8th Cir. 1995); *see also Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1093-94 (8th Cir. 2011). Relevant factors in making that determination include "the progress of the litigation at the time intervention is sought, the length of the delay, the reason for the delay, and the prejudice other parties would suffer if the intervention were permitted." *EEOC v. Westinghouse Elec. Corp.*, 675 F.2d 164, 165 (8th Cir. 1992).

Some courts have found delay and prejudice when the existing parties "had already engaged in extensive motion practice, commenced written discovery, and begun taking

depositions." *ACLU*, 643 F.3d at 1094 ("when the discovery schedule is set, written discovery has commenced, and some depositions have been taken in a lawsuit, the addition of new parties often results in some prejudice to the existing parties, though perhaps slight here"). In that same case, the court noted that the intervenors waited some fourteen months before making any effort to intervene, and "were content to remain aloof from this litigation and dependent on [the defendant] to adequately represent their interests despite their knowledge of the case and its progress." *Id.* at 1095.

The circumstances here are similar. This matter has been pending for almost four years and the progression order has been amended multiple times. Union Pacific has already moved for summary judgment on failure to exhaust grounds, filing that motion back on March 4, 2026, and which remains pending. (Filing No. 109).[2] The EEOC has had multiple opportunities to seek intervention before now, most recently when the court granted Union Pacific's Motion for Protective Order many months ago. (Filing No. 125). The court expressed its concern then that the EEOC was not a party and that it was not subject to the court's supervisory authority. The Plaintiff did not object to the court's order, nor did the EEOC make any effort to intervene until several months later. Like the circumstances in *ACLU*, the EEOC seemed "content to remain aloof from this litigation and dependent on [Plaintiff] to adequately represent their interests despite their knowledge of the case and its progress." *ACLU*, *643* F.3d at 1095.

The EEOC has certainly known about this case from its inception. Indeed, the alleged issues arose as far back as 2016 when efforts were undertaken to certify a class action, but at a minimum the EEOC investigated Plaintiff's charge of discrimination beginning in 2020 and issued a right-to-sue letter in January 2023. Just eight months later, in September 2023, the EEOC filed its own lawsuit for related claims in Minnesota, but made no effort to intervene in this case until now. In explaining its delay, the EEOC first

[2] Plaintiff has filed two related motions, including a motion to exclude certain facts and new arguments as it relates to the summary judgment motion, an alternative request to file a sur-reply brief, and a motion to stay ruling on the summary judgment motion. (Filing No. 168 and 178). Those motions also remain pending with the district court.

points to the government shutdown in October 2025, but acknowledges that it did not begin to explore the possibility of intervention until December 2025. (Filing No. 200 at 4). The EEOC argues that up until then, the discovery schedule in the Minnesota action and in this case was fairly aligned and accordingly intervention was unnecessary. But the court has reviewed carefully the docket in both matters and they appear to have progressed very differently. Notably, a number of interested parties in the Minnesota action moved to intervene almost immediately, filing their motion just three months after the EEOC filed its complaint. (Case No. 23-cv-3030-RCT-DLM, Filing No. 25). In that motion, the plaintiff-intervenors pointed out that their motion was timely "because the case has not progressed beyond the initial filing of the EEOC's Complaint (ECF No. 1) and Defendant's Motion to Dismiss (ECF No. 12)." (*Id.* at 1-2). That is certainly not the case here.

The EEOC explains that the formal process for obtaining intervention in this matter did not begin until January 2026, and that doing so required approval from the Office of General Counsel and from the Commission. That authorization was apparently not obtained until July 26, 2026. (Filing No. 200 at 4). While the court understands the inherent difficulties in navigating the maze of government bureaucracy, a simpler solution was to start that process much earlier. By then, much work had already been done, again including the filing and briefing of several dispositive motions (Filing No. 14 and 33); the appeal of one of those orders to the Eighth Circuit and later an unsuccessful writ of certiorari to the United States Supreme Court (Filing No. 53, 56, and 65); seven case progression orders (Filing No. 27, 64, 81, 90, 94, 98, 143, and 175); another dispositive motion which remains pending (Filing No. 109); and a variety of discovery-related matters, including a discovery dispute (Filing No. 76), a motion for sanctions (Filing No. 134), and a motion for protective order (Filing No. 102).

The purpose of EEOC's intervention also remains unclear. There can be no doubt that the existing claims in this case are based upon a federal statute administered and enforced by the EEOC and that its purported claims are based upon similar questions of law and fact. The court also does not doubt that the issues may have some general public

importance as certified by the EEOC. But while the EEOC represents that it has no intention to expand discovery or to interfere with any pending dispositive motion, it also represents at the same time that it intends to litigate the same disability claims as raised by Plaintiff, "though perhaps with different arguments or a different emphasis, and with an eye toward protecting the interests of the public as well as those of Mr. DeGeer." (Filing No. 189 at 3). The EEOC further acknowledges that while the pending summary judgment motion has been fully briefed, it "seeks to be able to participate in the further litigation of the case so that it may have its say in any motions notwithstanding the verdict that are predicated at least in part on Union Pacific's FRSA defenses and in any potential appeal should Defendant prevail in whole [sic] part either at summary judgment or thereafter." (Filing No. 189 at 5).

It remains unclear how the EEOC can accomplish these tasks without disruption when it has not participated as a party in any stage of this litigation (nor did it ask to do so in a timely manner), when the briefing on the pending summary judgment motion was completed months ago, and when discovery closes completely in just two weeks. The court agrees that permitting the EEOC to intervene at this late stage, even if just to raise new arguments with a different emphasis, would be prejudicial to the existing parties and certainly runs the risk of interfering with the orderly resolution of this case.[3] As the Eighth Circuit recognized in *ACLU*, even the "introduction of a new legal theory… could change the parties' respective strategies or framing of the issues during preliminary motion practice as readily as separate factual circumstances could." *ACLU*, 643 F.3d at 1094.

Regardless of the EEOC's intentions or noble goals, the threshold determination at this stage is whether the EEOC's efforts to intervene are timely. For the reasons noted herein, the court finds they are not.

---

[3] The EEOC relies in part upon the decision in *Billouin v. Monsanto Co.*, 162 F.R.D 351, 353 (E.D. Mo. 1995), arguing that the district court there granted its motion to intervene based in part upon its promise not to delay the discovery process in the case. (Filing No. 189 at 2). But notably in that case, the court pointed out that the EEOC's motion was timely filed prior to the deadline for adding parties. The deadline to amend the pleadings or add parties in this case expired on January 31, 2025, almost two years ago. (Filing No. 64).

Accordingly, IT IS ORDERED that the EEOC's Motion to Intervene is denied. (Filing No. 188).

Dated this 16th day of September, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge